22-1207. A motion to dismiss. Good afternoon, your honors, and may it please the court. I'm Dan Irwin, assistant federal defender on behalf of Jessica Martinez, the movement in this hearing today. This case is distinguishable from the Moskowitz case because it defies the interest and the rationale that that case relied upon. And I'd like to elaborate that on that, followed by a justification of the remedy request that we contemplate in this case. The reason that's the case is because it confounds what happens here, confounds the scope of precedent, because the very interest that the district court sought to vindicate, timely disclosure and firm trial dates, was undermined by the government's pursuit of this appeal. It is a zero-sum game that's not accounted for in other case law. Are you arguing bad faith, counsel? Yes, we are. To permit the government to delay trial, to seek review of a sanction for a pretrial delay is so paradoxical that it is unworkable. Now, should this proceeding progress to the merit stage, we would raise other issues under Moskowitz, specifically materiality and the frivolousness of the appeal and the fact that we don't believe the evidence was actually excluded. But at this stage, we believe that this court can decide the question of dilatory purpose and dismiss on those grounds pursuant to its sanctions power. You read the government's papers? I'm sorry? You read the government's papers, of course? Yes. They say they only discovered this extended tape on May 24th and disclosed it almost immediately thereafter. Tell me where the bad faith was. They've not accounted for the facts. The fact is that they were aware of this tape in January of 2020 and they didn't pursue it. The district court imposed what I think is a modest sanction and what will surely happen in this case is if we prevail, I mean, I strongly view this as we will prevail on appeal and that the district court's sanction was modest and appropriate, then the government will surely claim that the passage of time has remedied any surprise to the defense and the video should come in on those grounds. After my client has waited probably a year or so for this case to be decided. That's not good faith and that's not consistent with the Sixth Amendment and she has been incarcerated since that happened. So we think that that's where the bad faith- She's been incarcerated on this particular charge? Yes. Subsequent to the filing of the appeal, there was a bond motion related to substance abuse. She was incarcerated for 19 days, followed by I think 60 days in inpatient rehab. I would defer to the record, but it stands in inpatient rehab. She's not presently incarcerated, is she? No, she's not, but she's subject to, I believe she's subject to GPS monitoring, which was not true previously and she has never been incarcerated or subject to monitoring in her life prior to this. We don't disagree with the government statement of the Moskowitz case that that court said that the certification resolves the question, the purpose question alone, but we contend that that is dicta because it wasn't essential to the outcome of the Moskowitz case. That case considered materiality and this record is whole and apart different from the record considered in Moskowitz. You're here on a motions calendar. What exactly do you want us to do and why? We want this court to remand to the district court with directions to articulate a sanctions package. The reason we believe that's the best course of action- The government egregiously violated my client's Sixth Amendment rights. The best Sixth Amendment remedy is the fastest possible trial with something that puts my client in a better position that she was in than the position that she was in on June 2nd of this year. You don't want the tape shown to the jurors? We don't want the tape shown to the jurors and I think it's our right to take that position and contend that for the reasons that have been articulated below. But we think that because this is so unworkable and because it incentivizes- Discovery will never be closed under these circumstances and people are entitled to rely on these trial dates. That is the harm that was done here and that's the to whom to what that Judge Cabranes asked me about. But isn't this a material fact that the jurors are entitled to hear? Isn't that part of the standard that we are supposed to consider? It is part of the standard but I don't think that it is material because the government was prepared to try this case in May of 2022. It had filed its memo. It said the government will prove the case. The culture and expectation of our federal courts is that the government doesn't bring cases that it can't make. I'm not saying that they should and do always win, but why can't the government try its case as it had contemplated? Like I said, this is a zero-sum game. The burden of this has to fall on someone and it should fall on the government, not my clients. Thank you. Good afternoon, Your Honors. My name is Jonathan Francis. I'm an AUSA in the District of Connecticut and I investigated and was prepared to try this case below. Counselor, the opposing counsel just told us that you knew about this tape from January and you didn't seek it until May. Is that true? It is not. I believe, in fairness, what my opponent said was that the government knew about this in January of 2020. So we knew about it for more than two years is what he's claiming. That is not the case. As we laid out the facts, as the record is clear in this case, the videographers told the FBI, this is getting into the facts and might be a reason why this panel might want to kick this to the merits panel. However, I'm happy to get into this. The videographers told the FBI agents that they had approximately two hours of video. The FBI agents gave them a grand jury subpoena for all their video. The next day, I believe, they produced 13 minutes entitled raw footage along with a certification saying this is what we have. We had no reason to disbelieve them. The government had no basis. Wasn't that also part of what they told you? They said it was two hours. They gave us 13 minutes. We believed that they had either been incorrect or speaking hyperbolically. And even now, for instance, once they gave us the additional 15 minutes, no one, Ms. Martinez included, is not claiming that the 28 minutes, somehow there's an hour and 32 minutes that's floating around out there. But you didn't pursue it at the time when you got 13 minutes? That didn't raise questions in the government's mind? We did not. It was consistent with what had been provided to the State Election Enforcement Commission by Mr. Bradley back in 2018, 2017. And it also was entitled raw footage. So we had no reason to think that, I mean, we could give them another subpoena, I suppose. But frankly, we didn't think we had probable cause to seek a search warrant. So we didn't think there was anything left to do. We thought we had everything there was. Mr. Bradley's counsel apparently went to the videographers and asked them for more. And they told Mr. Bradley's counsel they had given the FBI everything they had. And so everyone was on the same footing until May 24th, 2022, which was the week before jury selection, when the videographers disclosed for the first time they had something more. How did they disclose it? Who did they tell? I believe they emailed it to the FBI agent who had been following up with them. We had re-interviewed them in preparation for trial so they could authenticate the 13 minutes that we had. And following that, when we showed it to them, they more or less said, no, no, no, that we have other stuff. They went home and looked. And then they emailed it to the FBI agent that evening of the 24th. The 25th was the pretrial conference. Beforehand, the FBI agent told us, so we told defense counsel. And then on the record, we told the court. You told defense counsel the day after you received it? Is that what you alleged in your papers? Yes, exactly. The next morning, the 25th, we informed defense counsel of this newly discovered evidence. We put it on the record during the pretrial conference. And we turned it over, I think it was 1 or 2 o'clock that afternoon, after the pretrial conference was over. So even if this was not for purpose of delay, you obviously didn't meet the deadlines set by the trial court for disclosure. So some penalty seems appropriate, doesn't it? In this circumstance, no, Your Honor, because there was no scheduling order in the case. There wasn't an end to discovery in this case? Well, the government is always investigating its case up to and through trial. And we continually produce things as we find them. So, for instance, if we interview someone mid-trial, we'll turn over that 302 so that everyone is situated the same. And for Brady and Rule 16 purposes, we don't have to field arguments that we're somehow withholding something. So you didn't think this was sanctionable because as soon as you got this material, you turned it over? Yes, under Rule 16, the government has no obligation to go out into the world and find everything. It has no due diligence obligation, nor under the standing order that the district court has in Connecticut. Instead, its due diligence obligation only applies to things that are in the government's possession. So either the government knows or should know are in the government's possession. So, for instance, it's no excuse that I'm working with the local police and I haven't gone and asked them for their files. So that's the should know part. I mean, you knew there were two hours of film. I did not. We did not, Your Honor, respectfully. And the reason for that is we got something labeled raw footage. Now, we thought, I can't claim to have a clear memory of this. But I think it's reasonable to assume when someone says we have two hours and then they get a grand jury subpoena. And under penalty of a subpoena, they give you 13 minutes and it's labeled raw footage. And it matches the same thing from years prior that had been turned over by one of the defendants. It seemed like they maybe had made a mistake when they said two hours. Or maybe they were there for two hours. Did you think you had an obligation to inquire further? Under Rule 16, no, we do not. Do I now wish we had? Of course, obviously. I think everyone wishes that. But under Rule 16 in the standing order, the government had no obligation. And then the sanction that the court imposed was not modest, as my opponent puts it. It was the most extreme sanction possible. The government asked twice for continuances. The first one we got. The second one was denied. And Moskowitz makes it, I mean, this all goes to the merits, which I enjoy. And we've briefed this. In fairness, the defendants haven't had a chance to respond. But under Moskowitz, the U.S. attorney's certification is conclusive as to non-deletery purpose and the materiality of the evidence. That's this court's reading of 3731, the statute. The defendant can't avoid Moskowitz for purposes of a motion to dismiss simply by labeling it as a sanction. It's just a horse of another color. Therefore, the court should deny this motion. If there are no further questions. What is the status of this matter? Well, based on the government's appeal pretrial, the matter was stayed. There has been nothing that's taken place before the district court. There's been some proceedings before the magistrate court with respect to specifically Ms. Martinez and her violation of her conditions of release. But, oh, and in this court, of course, we filed our brief on the same day that we responded to this motion to dismiss. But the pendency of this motion to dismiss, as I understand it, has stayed the defendant's response to that. And so there's been no responsive brief. So the jury was not bid. You were careful to try and do this before jeopardy attached. Is that correct? Absolutely. Had jeopardy attached, this would not be a well-founded appeal. Under 3731, the government's interlocutor appeals are only available prior to the jury being- So you did that as soon as you appreciated what was going on? That's your argument? Well, yes. That's not only my argument, but that's actually what happened, Your Honor. That morning of June 2nd, the district court suppressed this evidence. We had been in contact with the U.S. attorney and our appellate chief about the possibility of this happening. Once it happened, we were in contact with the Department of Justice, including the Solicitor General's office. And that afternoon, the United States attorney was comfortable filing the certification shortly after we followed our notice of appeal. But yes, we had about a 23-hour window to decide what to do, because the district court had indicated that it was his intention to swear in the jury early the next morning, so approximately 10 a.m. Thank you very much for your time. If there are no further questions, we rest on our brief. Thank you. Thank you. We'll recess and return in a few minutes to hear the day calendar. Do I stand to recess? Okay. Thank you.